**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**DOCKET NO.: 21-10017-GG**

---

CYNTHIA DIANE YELLING,

PLAINTIFF – APPELLANT,

v.

ST. VINCENT'S HEALTH SYSTEM,

DEFENDANT – APPELLEE.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
DISTRICT COURT CIVIL ACTION NO.: 2-17-CV-01607-SGC

---

**REPLY BRIEF OF APPELLANT**

---

COUNSEL FOR APPELLANT:

Leslie A. Palmer
PALMER LAW, LLC
104 23rd Street South, Suite 100
Birmingham, AL 35233
Telephone: (205) 285-3050
Facsimile: (205) 285-3050
leslie@palmerlegalservices.com

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Eleventh Circuit Rule 26.1-1, the undersigned counsel of record for the Appellant hereby certifies the following is a complete list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, corporations (including subsidiaries, conglomerates, affiliates, parent corporations and any publicly held corporation which owns 10% or more of the party's stock), and other identifiable legal entities related to a party that has an interest in this case.

1. Ascension Health, a non-profit, faith-based health care system, parent to Appellee, St. Vincent's Health System – Appellee is a wholly owned subsidiary of Ascension Health.

2. Baker, Tammy L. – Counsel for Appellee;

3. Cynthia Diane Yelling – Appellant;

4. Cornelius, Hon. Staci G. – United States Magistrate Judge for the United States District Court for the Northern District of Alabama – by Consent pursuant to 28 U.S.C. § 636(c).

5. Equal Employment Opportunity Commission – Amicus Curiae;

6. Goldstein, Jennifer S. – Associate General Counsel, EEOC;

7. Jackson Lewis, P.C. – Law Firm of Counsel for Appellee;

8. Miller, Shannon L. – Counsel for Appellee;

9. Oxford, Susan R. – Attorney, EEOC;

i

10. Palmer Law, LLC – Law Firm of Counsel for Appellant;

11. Palmer, Leslie A. – Counsel for Appellant;

12. Reams, Gwendolyn Young – Acting General Counsel, EEOC;

13. St. Vincent's Health System – Appellee;

14. Theran, Elizabeth E. Assistant General Counsel, EEOC;

15. Yelling, Cynthia Diane – Appellant.

Respectfully submitted this 27th day of August, 2021.

/s/ Leslie A. Palmer
Leslie A. Palmer
Attorney for Appellant

OF COUNSEL:
PALMER LAW, LLC
104 23rd Street South, Suite 100
Birmingham, AL 35233
(205)285-3050
leslie@palmerlegalservice.com

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

TABLE OF CONTENTS ...................................................................................... iii

TABLE OF AUTHORITIES ................................................................................ v

ARGUMENT ....................................................................................................... 1

   I.   SVH forced Yelling to work in an environment of ridicule and insult that altered the conditions of her employment and, when viewed by a reasonable person in Yelling's position, considering the totality of the circumstances, would be considered severe or pervasive. ........................................................ 1

   A.  Specific Conduct that was not severe or pervasive years ago is not precluded from being severe or pervasive today. ............................................. 2

   B.  SVH does not view the evidence under a totality of circumstances, but instead relies on a compilation of alleged facts that somehow completely ignores Yelling's version of the events. ........................................................... 4

   1)  SVH failed to protect Yelling from racial comments that were frequent, severe, and humiliating or threatening. ............................................................ 5

   2)  Considering the totality of the circumstances, the conduct interfered with Yelling's Job performance. ................................................................................ 8

   II.  Following this Court's well-developed precedent and recent guidance from the United States Supreme Court, Yelling has created a triable issue of fact concerning SVH's discriminatory and retaliatory actions and the case must be submitted to a jury. ............................................................................ 10

   A.  The context of the analytical framework for race and retaliation is relevant to employment discrimination claims. ........................................................... 11

   B.  SVH cannot force Yelling into the *McDonnell Douglas* framework where she has established other evidence of discrimination or retaliation. .............. 12

   1)  Yelling's Title VII discrimination case should have been considered under a mixed-motive analysis. ............................................................................... 13

2)  The same mixed-motive analysis applies to all of Yelling's claims......... 15

3)  Using the mixed motive analysis, Yelling's has presented evidence of race discrimination and retaliation. ........................................................................ 16

C.  Even outside of the mixed motive analysis, Yelling has presented evidence of race discrimination and retaliation. ............................................................ 23

CONCLUSION ................................................................................. 25

CERTIFICATE OF COMPLIANCE ..................................................... 27

CERTIFICATE OF SERVICE............................................................. 28

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Adams v. City of Montgomery*, 2013 U.S. Dist. LEXIS 141616 (M.D. Ala. Sept. 7,
    2013) ....................................................................................... 17, 18, 19

*Blash v. City of Hawkinsville and Pulaski Co. Ga., Sheriff's Office*, 2021 WL
    1561347 (11th Cir. Apr. 21, 2021) ...................................................... 23

*Bostock v. Clayton Cnty., GA*, 140 S. Ct. 1731 (2020) ............................. 12, 15, 16

*Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 270 (4th Cir. 2015) .................... 7

*Burlington Northern and Santa Fe Ry., Co. v. White*, 548 U.S. 53 (2006) ...... 12, 18

*Cole v. Bd. of Trustees of N. Ill. Univ.*, 838 F.3d 888 (7th Cir. 2016) .................... 6

*Combs v. Plantation Patterns Meadowcraft, Inc.*, 106 F.3d 1519 (11th Cir. 1997)
    .................................................................................................. 24

*Comcast Corp. v. Nat'l Assn. of African American-Owned Media*, 140 S.Ct. 1009
    (2020) ...................................................................................... 12

*Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008) ............................................. 18

*Desert Palace, Inc. v. Costa*, 593 U.S. 90 (2003) ................................................. 12

*Edwards v. Wallace Comm. Coll.*, 49 F3d 1517 (11th Cir. 1995) ............................ 4

*EEOC v. Reichold Chems, Inc.*, 988 F.2d 1564 (11th Cir. 1993) ............................ 21

*Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009) ..................................................... 12

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) ..................................................... 2

*Hein v. IMS Grear Holding, Inc.*, 2018 U.S. Dist. LEXIS 112965 (N.D. Ga. Jan. 31, 2018) ......................................................................... 24

*Henderson v. Fedex Express*, 442 Fed. Appx. 502 (11th Cir. 2011) ..................... 22

*Howard v. Walgreen Co.*, 605 F. 3d 1239 (11th Cir. 2010) ................................. 20

*Howell v. Compass Group*, 448 Fed. Appx. 30 (11th Cir. 2011) .......................... 20

*Johnson v. PRIDE Indus.*, 2021 U.S. App. LEXIS 23453 (5th Cir. Aug. 6, 2021). 2, 3, 4, 6, 7

*Jones v. UPS Ground Freight*, 683 F.3d 1283 (11th Cir. 2012) ........................ 7, 8

*Kilgore v. Thompson & Brock Mgmt.*, 93 F.3d 752 (11th Cir. 1996) ................... 10

*Landrau-Romero v. Banco Popular De P.R.*, 212 F.3d 607 (1st Cir. 2000) ............ 6

*Lewis v. Blue Bird Corp.*, 835 Fed. Appx. 526 (11th Cir. 2020) .......................... 13

*Lewis v. City of Union City, GA, (Lewis II)*, 934 F. 3d 1169 (11th Cir. 2019) ...... 23

*McCann v. Tillman*, 526 F.3d 1370 (11th Cir. 2008) .............................................. 4

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) .................................... 11

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986) ........................................ 2

*Oncle v. Sundowner Offshore Serv.*, 523 U.S. 75 (1998) ................................. 2, 18

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) ............................................. 11

*Putman v. Sec'y*, 510 Fed. Appx. 827 (11th Cir. 2013) ......................................... 21

*Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227 (11th Cir. 2016) ............. 14, 15, 16

*Rioux v. City of Atlanta*, 520 F.3d 1269 (11th Cir. 2008) ..................................... 13

vi

*Shannon v. Bellsouth Tele., Inc.*, 292 F.3d 712 (11th Cir. 2002) .......................... 21

*Smelter v. S. Home Care Servs.*, 904 F.3d 1276 (11th Cir. 2018) ....................... 7, 8

*Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011) ....................... 13

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) ........................................... 12

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) ............................... 11

*Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) ................ 12

*Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515 (11th Cir. 1991) .............. 12, 20, 21

*Williams v. Hous. Auth. of Savannah, Inc.*, 834 F. App'x 482 (11th Cir. 2020) .... 15

*Young v. UPS*, 575 U.S. 206 (2015) ...................................................................... 12

## Statutes

42 U.S.C. § 1981 ............................................................................................ 11, 12

42 U.S.C. § 2000e .................................................................................... 11, 12, 16

## Other Authorities

https://www.merriam-webster.com/dictionary/slur ................................................. 7

## Rules

Eleventh Circuit Rule 26.1-1 .................................................................................. i

Fed. R. App. P. 32(a)(7)(B) ................................................................................. 27

## **ARGUMENT**

St. Vincent's Hospital ("SVH") asks this Court to ignore the Circuit's longstanding precedent, controlling Supreme Court decisions and the Federal Rules of Civil Procedures.  SVH seeks to force this Court and Yelling into an inapplicable pretext/burden shifting analysis ignoring several other evidentiary frameworks for proving discrimination and retaliation. Additionally, in arguing that the barrage of racist statements Yelling suffered was not severe or pervasive, SVH draws all reasonable inferences and views all facts in the light most favorable to SVH, against the Rule 56 standard. Yelling has presented sufficient evidence that a reasonable juror in Yelling's position, considering the social context, would find the racist conduct of her co-workers was severe or pervasive. Yelling has presented a triable issue of fact regarding whether SVH took adverse actions against Yelling because of or motivated by her race or in retaliation for her protected activity. Because genuine issues of fact exist as to race discrimination, retaliation, and hostile work environment, this Court should REVERSE the decision of the district court and REMAND the case for trial.

**I.     SVH forced Yelling to work in an environment of ridicule and insult that altered the conditions of her employment and, when viewed by a reasonable person in Yelling's position, considering the totality of the circumstances, would be considered severe or pervasive.**

The analysis of a hostile work environment claim cannot be broken down to an "if this than that" formula. Not "if derogatory statements and threats but no "n-

1

word" and no "if 7 incidents over 5 months." Instead, the question is simply would a reasonable person in Yelling's position, considering the social context and experience, find the conduct complained of severe or pervasive to alter the employment conditions. *Oncle v. Sundowner Offshore Serv.*, 523 U.S. 75, 81 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57. 65 (1986). The threshold is not illusively high, as SVH claims, but instead reasonable. It is not a test of conduct fixed in time, but instead a general principle that changes with contemporary societal views.

### A.    Specific Conduct that was not severe or pervasive years ago is not precluded from being severe or pervasive today.

The Fifth Circuit Court of Appeals very recently addressed the importance of a changing dynamic when it reversed a district court's grant of summary judgment on a hostile work environment claim in *Johnson v. PRIDE Indus.*, 2021 U.S. App. LEXIS 23453 (5th Cir. Aug. 6, 2021). In *Johnson*, the 5th Circuit considered if the plaintiff raised a genuine issue of fact as to whether his work environment was "permeated with discriminatory intimidation, ridicule, and insult, [so that it was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Id.* at *11 (citing *Harris*). The plaintiff testified about two (2) specific instances where a company supervisor – not the plaintiff's supervisor – used a Spanish racial slur that has been equated to "n****r" and another employee testified that the supervisor regularly

2

used the term outside of the plaintiff's presence. *Id.* at *13. The plaintiff also testified that the supervisor regularly referred to him as "mijo" or "manos" which he believed to be equivalent to "boy." *Id.* at *16. Noting the importance of viewing the reasonable inferences in the light most favorable to the plaintiff, the court stated the relationship between the plaintiff and the supervisor was "inescapably colored" by the two uses of the vial epithet, even a "seemingly innocuous" nickname could "take on a racially insulting, bullying, or belittling cast when viewed within the full breadth of the relationship between [the two.]" *Id.* at *17. The plaintiff also testified the supervisor hid his paperwork, conduct that could be perceived as racial harassment under the circumstances. *Id.* The 5th Circuit found that this evidence could allow a reasonable factfinder to conclude that the harassment the plaintiff experienced was severe or pervasive. *Id.* at *19-20. The facts in the instant case, as discussed in Yelling's initial brief, and further addressed below, share many similarities to the conduct in *Johnson*. The employer in *Johnson*, like SVH in the instant case, relied on an earlier decision for an "if this than that" test noting that the circuit had previously found no hostile work environment where the employer threw the plaintiff's check on the ground and said "just like a damn [n*****]" one time as he was picking it up. *Id.* at *20 FN14. The 5th Circuit distinguished the cases, but more importantly stated that it questioned the earlier case's reasoning and was "not convinced" it would "reach the same

3

result if faced with the case today." *Id.* This single statement bears so much importance to the concepts we are arguing today. There is no bright line test for whether conduct is severe or pervasive. The earlier cases stand for a general legal principle – not a checklist or threshold number of incidents required for proof. Because severe or pervasive conduct depends on the reasonable person test and societal norms change, we cannot conclude that what was not severe or pervasive 20 years ago would be considered the same today.

**B.     SVH does not view the evidence under a totality of circumstances, but instead relies on a compilation of alleged facts that somehow completely ignores Yelling's version of the events.[1]**

SVH views the evidence against the Rule 56 standard, viewing all facts in the light most favorable to SVH, drawing inferences in SVH's favor, and sometimes just ignoring the facts and testimony all together. Additionally, the few hostile work environment cases cited by SVH are distinguishable from Yelling's. In *Edwards v. Wallace Comm. Coll.*, 49 F3d 1517, 1522 (11th Cir. 1995) the plaintiff relied on statements that she did not know about at the time they were said, speculated about other evidence, and could not provide concrete examples. In *McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008) the plaintiff heard "boy"

---

[1] Notably, SVH argues 10 pages of "facts" before mentioning Yelling's complaints of racial harassment that spanned over ten months. SVH views the entire record in the light most favorable to SVH, misconstruing and misstating important pieces.

4

and "girl" comments a couple of times over the span of two years and testified that

it did not affect his work. Each of these varies greatly from Yelling's experience.

> **1)    SVH failed to protect Yelling from racial comments that were frequent, severe, and humiliating or threatening.**

Despite SVH's assertion, Yelling did not just hear a one-time comment, and

definitely heard comments more egregious than "boy" or "girl." Yelling testified

that her co-workers regularly made comments comparing the Obamas to

"monkeys" or "apes" and stating they should "go back to Africa." Additionally,

her co-workers regularly referred to Black patients as "welfare queens" and

"crackheads" and called them "ghetto fabulous." Yelling testified that these

comments were regular and "not unusual" and by March of 2015, her workplace

was "heated with racially disparaging comments." Even one of her White

Supervisors joined in (or arguably led the way) asking – in front of Yelling as the

only Black nurse on shift if then President Obama, was visiting a predominately

black college to "hand[ ] out food stamps[.]" (App. Brief at 16-17).

SVH is misplaced in arguing that Yelling rarely worked with these nurses

and that her own one-time quote of biblical scripture or alleged rudeness somehow

diminishes the frequency or severity of the comments SVH subjected her to.

Yelling's brief contains "repetition" not as a ploy to skew evidence, but because

Yelling experienced repetition. Her co-workers repeated these comments and her

testimony established such. Yelling testified that her co-workers "always" made

these comments, it was "not unusual," there was "culture" on the unit, and they did not hold back their opinions of Blacks. (App. Brief. at 17). Looking to the totality of circumstances, in the light most favorable to Yelling, the same co-workers began bullying her when she started to complain. They boldly bragged, when Yelling was the only Black nurse around, that they were "confederate flag-flyers" and redneck card-carrying gun owners that carried 24/7. They began complaining about her "tone" and "interpersonal relationships", taunting her about being fired, and hid her lab slips. Some even verbally attacked her with raised voices or curse words. (App. Brief at 17-11). Similar to the "mijo" and "manos" statements in *Johnson*, even if some of this conduct were not facially racial, harassment that "might seem neutral in terms of race . . . can contribute to a hostile work environment claim if other evidence supports a reasonable inference tying the harassment to the plaintiff's protected status." and "[a]lleged conduct that is not explicitly racial in nature may, in appropriate circumstances, be considered along with more overtly discriminatory conduct in assessing a Title VII harassment claim." *Johnson*, 2021 U.S. App. LEXIS 23453 (5th Cir. Aug. 6, 2021) (quoting *Cole v. Bd. of Trustees of N. Ill. Univ.*, 838 F.3d 888, 896 (7th Cir. 2016) and *Landrau-Romero v. Banco Popular De P.R.*, 212 F.3d 607, 614 (1st Cir. 2000)).

The district court erred in concluding, and SVH inappropriately argues that Yelling regularly worked with only one of the speakers. However, even this one

speaker's comments were repeated with significant frequency that is in no way diffused by SVH's assertion that the two had prayed together or she had asked unoffensive questions about Yelling's hair. A speaker cannot wipe away their racist statements by sandwiching them with non-racist statements. The statements comparing Blacks to "monkeys," "apes," "crackheads," and "welfare queens" are humiliating. Additionally, it is reasonable that Yelling, as the only Black nurse on the shift, would feel threatened by the regular comments that her co-workers were confederate flag-flyers that carried guns 24/7, leading to the inference they were carrying guns at work. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1299-1300 (11th Cir. 2012).

SVH and the district court inappropriately attempt to distinguish Yelling's case from *Smelter v. S. Home Care Servs.*, 904 F.3d 1276, 1285-1286 (11th Cir. 2018) merely because no one called Yelling a "dumb black n****r" and SVH flatly misstates the evidence claiming that "no one made any racial slurs in Yelling's presence[.]" Merriam-Webster's dictionary defines a "slur" as "an insulting or disparaging remark or innuendo." https://www.merriam-webster.com/dictionary/slur. It is absurd, and no doubt inappropriate, to argue that regular reference to Blacks as "monkeys"[2] or "apes" that should "go back to

---

[2] Other circuits have found that "porch monkey" is a racial epithet and even limited use of two instances by a supervisor was severe or pervasive because it was the type of case contemplated by *Faragher*. *See Johnson*, 2021 U.S. App. LEXIS 23453, at *15 FN9 (5th Cir. Aug. 6, 2021) (citing *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 270, 280 (4th Cir. 2015)).

7

Africa" or "ghetto fabulous", "welfare queens" and "crackheads" does not amount to racially insulting or disparaging remarks or innuendos. SVH further attempts to muddy the water by claiming that the EEOC, in its Amicus Brief, concedes that the allegations are not extreme. The EEOC's position, with which Yelling agrees, is that just because the conduct in Yelling's case may not equal point-for-point the exact behavior in *Smelter* or *Jones* does not mean that Yelling is somehow excluded from a finding of hostile work environment. SVH is also flawed in arguing that because the "monkey," "ape" and Africa statements were made about the Obamas they were simply "political diatribes" and not racial slurs. Yelling, as a Black individual, shares the same physical characteristics with the Obamas that her co-workers felt were appropriate to insult in her presence. It is more than reasonable that Yelling could believe that the derogatory beliefs also applied to her, Black patients, and all Blacks.

**2) Considering the totality of the circumstances, the conduct interfered with Yelling's Job performance.**

The district court erred in viewing each statement in a vacuum without consideration to the totality of the circumstances. Yelling's account of the increased incidents over 2015, and the targeting and bullying, evidence that the racist statements interfered with her job performance. Like the conduct in *Johnson*, all of the co-worker interactions were "inescapably colored" by the co-workers use of racial slurs and even seemingly innocuous conduct, like hiding lab slips or

8

refusing to help with a patient "take on a racially insulting, bullying, or belittling cast when viewed within the full breadth of the relationship between [Yelling and her co-workers.]" The totality of the circumstances require inclusion of Yelling's testimony concerning Charge Nurse Wilhite's March 2015 statement, her testimony that by 2015 her work environment had become "heated with the racially disparaging comments[,]" and her testimony that her manager Dubose had a "quota" and only allowed one Black nurse per shift.

Additionally, and importantly, the totality of the circumstances required the court to consider that SVH failed to take any remedial action which allowed for the conduct to escalate to the point where Yelling's co-workers were taunting her about getting fired and reporting every move Yelling made to Dubose. Yelling testified that there was a "culture" on the unit and that her co-workers did not hold back their opinions of Blacks. The evidence shows that Yelling's supervisors ignored and sometimes "laughed" off Yelling's complaints, Dubose did not investigate or even speak to Yelling about her complaints, the House Supervisor said it was Dubose's unit, the Administrative Nursing Director cast it as Yelling's fault and told Yelling to "go to each team member . . ." to see how she could improve their relationships, and HR took no steps address Wilhite's comments, co-workers' comments, or Dubose quota. (App. Brief at 18, 21). Remedial action must be "reasonably likely to prevent the misconduct from recurring." *Kilgore v.*

9

*Thompson & Brock Mgmt.*, 93 F.3d 752, 754 (11th Cir. 1996). Nothing in the record supports any conclusion that SVH did any investigation into Yelling's complaints about the specific comments or quota. SVH did not take any action that would be reasonably likely to prevent the comments from recurring or stop Dubose from implementing any Black staffing quota.

Because the evidence viewed in the light most favorable to Yelling shows that SVH subjected her to severe or pervasive racial conduct that interfered with job performance, this Court should reverse the district court's opinion and remand the case for trial.

## II.    Following this Court's well-developed precedent and recent guidance from the United States Supreme Court, Yelling has created a triable issue of fact concerning SVH's discriminatory and retaliatory actions and the case must be submitted to a jury.

Yelling has presented evidence that SVH acted with discriminatory intent in its staffing actions by utilizing a one black-nurse per shift staffing quota which resulted in denying her acting charge nurse pay when she picked up shifts, denying her pick-up shifts, and rotating her out of the department out of turn. Yelling has also presented evidence that SVH acted with retaliatory intent in its disciplinary actions including drug testing her in June of 2015, suspending her in November of 2015, not applying progressive discipline equally, and terminating her. *McDonnell Douglas*, while instructive, is not applicable to Yelling's case and this Court should reverse the district court's ruling and remand the case for trial because

10

Yelling has shown SVH's discriminatory and retaliatory intent under multiple evidentiary views.

### A. The context of the analytical framework for race and retaliation is relevant to employment discrimination claims.

Despite SVH's assertion, Yelling is not asking the Court to reverse precedent. In fact, Yelling is asking just the opposite. If the evidence in this case is viewed in the light most favorable to Yelling, and all reasonable inferences are drawn in favor of Yelling, precedent establishes that the district court erred, and this case should be reversed. SVH asks this Court to apply broad principles to the facts of this case without considering the context or origin of those principles. Context matters and should always be considered.  The United States Supreme Court provided the first guidance on the analytical framework applicable to race discrimination and retaliation cases in 1973. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). At the time of the *McDonnell Douglas* decision, Title VII did not authorize jury trials, and the district court judge was the fact finder. As this Court is well aware, *McDonnell Douglas* provided litigants and courts the traditional burden shifting framework that has been used in both Title VII and § 1981 discrimination and retaliation cases. The Supreme Court has continually expanded, clarified, and detailed this analysis over the last 48 years, including after congressional amendments in 1991. *See e.g. Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981); *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989); *St.*

11

*Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Desert Palace, Inc. v. Costa*, 593 U.S. 90 (2003); *Burlington Northern and Santa Fe Ry., Co. v. White*, 548 U.S. 53 (2006); *Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009); *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338 (2013); *Young v. UPS*, 575 U.S. 206 (2015); *Comcast Corp. v. Nat'l Assn. of African American-Owned Media*, 140 S.Ct. 1009 (2020); *Bostock v. Clayton Cnty.*, *GA*, 140 S. Ct. 1731 (2020).

The Civil Rights Act of 1991 combined elements of Title VII and § 1981 breathing new life into both, allowing for jury trials in Title VII cases and overturning some earlier Supreme Court decisions that limited the earlier Acts' effectiveness. Once a Title VII litigant had a right to a jury trial, the district court judge no longer sat as the factfinder, making it necessary nearly 20 years after *McDonnell Douglas*, to adapt the framework to allow for a jury's credibility determinations. Although each of the forgoing decisions has evolved the analysis of race discrimination and retaliation cases, SVH asks this Court to rely on the original, unevolved framework, ignoring that "the prima-facie case method was 'never intended to be rigid, mechanical, or ritualistic[.]'" *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1525 (11th Cir. 1991).

**B.    SVH cannot force Yelling into the *McDonnell Douglas* framework where she has established other evidence of discrimination or retaliation.**

12

This Court has cautioned repeatedly "that establishing the elements of the *McDonnell Douglas* framework is not the only way to survive summary judgment[.]" *Lewis v. Blue Bird Corp.*, 835 Fed. Appx. 526, 529 (11th Cir. 2020) (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). Noting that a court should not rigidly apply the prima facie elements, this Court stated that the focus should not be narrowed to a specific element, but instead on whether there is "other evidence of discrimination from which an inference of discrimination could be found[.]" *Rioux v. City of Atlanta*, 520 F.3d 1269, 1277 (11th Cir. 2008). There is no mandatory checklist or formula, "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith*, 644 F.3d at 1328. Even the *McDonnell Douglas* framework itself is "flexible and depend[s] on the particular situation" *Id.* This Court has stated a "plaintiff will ***always*** survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent[,]" presents a convincing mosaic "that would allow a jury to infer intentional discrimination[,]" or sets forth evidence to support "an inference of . . . discrimination."[.] *Id.* (emphasis added). Yelling has done just that.

**1)     Yelling's Title VII discrimination case should have been considered under a mixed-motive analysis.**

13

Recognizing that in many instances multiple reasons can and do motivate a decision, and that sifting through those reasons and truthfulness involves credibility determinations, this Court further clarified a plaintiff's burden in these mixed-motive cases in *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227 (11th Cir. 2016). *Quigg* stated clearly that "*McDonnell Douglas* is inappropriate for evaluating mixed-motive claims because it is overly burdensome when applied in the mixed-motive context." *Id.* at 1237. SVH's position that Yelling must admit to the alleged wrong-doing to trigger a mixed motive analysis is incorrect and seeks to place Yelling in a never ending "gotcha" scenario. As the Court stated in *Quigg*, whether a claim is single or mixed-motive is merely a theory of discrimination – not an individual cause of action – and instead serves as an alternate causation standard for proving discrimination. *Id.* at 1235 FN4. SVH's position is an attempt to muddy the water by forcing the court to consider a "same decision" affirmative defense that is not appropriate at summary judgment. Instead, it is completely possible for Yelling to take the position that both legal and illegal motives drove the decision, even where she denies that she committed the alleged-wrong. Defendants regularly argue this "honest belief" position. SVH has no issue depending on "honest-belief" when it means forcing Yelling into a pretext analysis but denies that the same "honest belief" can be used to support Yelling's position that this is a mixed-motive case. It is the jury's job to weigh credibility and

14

determine which set of facts to believe. Yelling is not excluded from arguing mixed-motive merely because she denies the alleged misconduct. Because her Title VII discrimination case falls squarely into the mixed motive analysis, the district court erred in applying *McDonnell Douglas* and because she has shown enough evidence that a reasonable jury could conclude race was a motivating factor, the district court erred in dismissing Yelling's Title VII discrimination case.

      **2)    The same mixed-motive analysis applies to all of Yelling's claims.**

The Supreme Court's holding in *Bostock* applied a "but for" causation standard that mirrors this Court's "motivating factor" language in *Quigg*. *See Bostock*, 140 S. Ct. at 1739. *See also Quigg* at 814 F.3d at 1239. Yelling is in no way asserting that *Bostock* overturned *McDonnell Douglas*, and SVH misses the mark in so arguing. SVH relies on this Court's post *Bostock* opinion in *Williams v. Hous. Auth. of Savannah, Inc.*, 834 F. App'x 482, 488 (11th Cir. 2020) for the proposition that *McDonnell Douglas* is still the *soup du jour* post-*Bostock*.  Again, SVH completely ignores context. The only application *Bostock* has to *Williams* relates to FN6 where this Court noted that retaliation cases were analyzed under a "but-for" causation standard – which *Bostock* clarified could be multiple causes. Importantly, the briefing on *Williams* overlapped the *Bostock* opinion with the response and reply briefs coming in after the opinion was released. Neither party argued *Bostock* had any bearing on the matter, even in the petition for rehearing

15

(which was denied). The Court's opinion in *Williams* shows it is also wholly distinguishable from Yelling. First, the facts in *Williams* showed that unlike Yelling, the plaintiff admitted to the alleged misconduct. Second, the Court in *Williams* explicitly found that the plaintiff did not allege *ANY* facts to suggest that gender was a motivating factor. Finally, and most importantly, the plaintiff in *Williams* did not argue mixed-motive. *Williams* simply has no bearing on whether *McDonnell Douglas* is the appropriate framework or whether *Bostock* allows for a mixed motive analysis in Yelling's case.

### 3) Using the mixed motive analysis, Yelling's has presented evidence of race discrimination and retaliation.

Under the appropriate mixed-motive framework, Yelling must show race and/or protected activity motivated SVH and made a difference in the employment decision. If race and/or protected activity motivated SVH and made a difference in the employment decision, Yelling's Race and Retaliation claims should proceed to a jury.[3] *See Bostock*, 140 S. Ct. at 1739. *See also Quigg* at 814 F.3d at 1239. Yelling has satisfied this burden with regard to several adverse actions. SVH made staffing decisions that affected Yelling's employment and compensation including maintaining a one-black nurse per shift quota, denying her acting charge nurse pay

---

[3] Because of the 1991 amendments to Title VII, Yelling's race discrimination claim under Title VII can proceed to a jury even without showing that race made a difference in the decision, as long as it was simply a motivating factor. Yelling does not have to establish that her race made a difference because Title VII does not require "but for" causation.

when she picked up shifts, denying her pick-up shifts, and rotating her out of the department out of turn while keeping White pool nurses. (App. Brief at 18, 20). SVH's position that all these staffing actions took place years before Yelling's EEOC charge ignores her testimony and draws inferences in favor of SVH against the Rule 56 standard. While within the applicable time-period Yelling's assigned shift was weekend days and that shift that did not allow for charge nurse pick-ups, the evidence also shows she worked extra shifts during the week. (App. Brief at 15). It is a reasonable inference, and SVH cannot dispute that some of these pick-up shifts occurred in the months surrounding Yelling's charge and are therefore the adverse staffing actions Yelling refers to. Additionally, Yelling testified that she was drug-tested when a White nurse who fell out of her chair was not. (App. Brief at 19). SVH also applied discipline in an unequal manner by suspending Yelling for a verbal altercation and not suspending any of the 3 White nurses SVH knew had instigated verbal altercations with Yelling. (App. Brief at 21-22).

The suspension, drug test, and progressive discipline support Yelling's retaliation claim. "Adverse employment actions are interpreted more broadly in the retaliation context than in the discrimination context." *Adams v. City of Montgomery*, 2013 U.S. Dist. LEXIS 141616, at *38 (M.D. Ala. Sept. 7, 2013). Yelling has shown that a reasonable employee would have found her June 2015 drug test, her November 2015 suspension, and her 2015 progressive discipline

17

materially adverse and been dissuaded from taking protected activity because of those actions. *Id*. at *38-39. As the Supreme Court has stated, while the standard is objective, "[c]ontext matters." *Burlington*, 548 U.S. at 69. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of words used or physical acts performed." *Id.* (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998)). As an example, the Supreme Court noted that schedule changes may not always be adverse, but the courts must consider the circumstances because it would be enormously adverse to a young mother with school aged children, and not receiving a lunch invitation is different than being excluding from training lunches that impact professional advancement. *Id.* The Supreme Court reiterated that a materially adverse action is a "legal standard that speaks in general terms rather than specific prohibited acts[.]" *Id.* And this Court has commented that "*Burlington* . . . strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered "materially adverse" to him and thus constitute adverse employment actions." *Crawford v. Carroll*, 529 F.3d 961, 973 FN13 (11th Cir. 2008).

SVH's assertion that drug testing is not a materially adverse action ignores the guidance in *Crawford* and *Burlington*. One court has noted that "[a]lthough

18

submitting to drug and alcohol screening is, for some employees, a non-offensive and expected part of the job, being singled out and accused of using drugs or alcohol on the job is not a typical, petty, or trivial workplace experience." *Adams,* 2013 U.S. Dist. LEXIS 141616, at *39 (M.D. Ala. 2013, Sept. 7, 2013). Yelling testified that the drug test was humiliating, she was suspended for more than one week pending the results, her co-workers alleged reasonable suspicion of drug use after she reported their racially motivated behavior and SVH allowed her to continue unsupervised, direct patient care for several hours supporting that it in fact did not have a suspicion that she was on drugs. (App. Brief at 19). Yelling has presented evidence that the June 2015 drug test was a materially adverse action, or at the very least, is for a jury to decide because it is not a petty or trivial workplace experience.

The same is true for the progressive discipline and micromanaging SVH placed Yelling under. SVH argues that the monitoring is not "intensive" and that complaints by doctors and patients cannot be retaliatory.  Again, SVH misses the mark and draws facts and inferences in its own favor. Yelling testified that she was performing regular nursing care which requires some level of independent discretion. One of her supervisors testified she "did her job" and "took care of her patient[s]." (App. Brief at 15). Yelling testified that patients would fire nurses because they were not happy with the care that nurse provided. (App. Brief at 21).

The patient conduct is not the retaliatory conduct. Instead, the retaliation comes from what SVH does in response. SVH opted to counsel and write-up Yelling, and to place her in progressive discipline – essentially saying "we are taking steps toward termination." SVH claims that this Court's holding in *Howard v. Walgreen Co.*, 605 F. 3d 1239, 1245 (11th Cir. 2010) supports the broad proposition that progressive discipline is not an adverse employment action. Again, SVH ignores the distinction between the cases. In *Howard*, the employee merely received a voicemail that made verbal mention of his job being in jeopardy and no further action was taken. *Id.* In the instant case, Yelling was *actively* placed in progressive discipline, much like a performance improvement plan, where the evidence is clear that SVH was taking active steps to move toward termination.[4] This Court has recognized that a jury can find a performance improvement plan, when used as discipline, can be adverse employment actions. *Howell v. Compass Group*, 448 Fed. Appx. 30, 36 (11th Cir. 2011). Additionally, Dubose told Yelling's charge nurse to "document everything" and even the most trivial complaints about Yelling made their way to HR. (App. Brief at 18-20). SVH's actions are more in line with the actions of the employer in *Weaver v. Casa Gallardo, Inc.*, 922 F.2d at 1524-1526. *Weaver* was decided before Title VII jury trials, when the district court judge

---

[4] Yelling also testified that SVH's progressive discipline policy can prevent an employee from transferring departments which changes the terms and conditions of employment. Additionally, SVH relied on Yelling's progressive discipline in terminating her noting "your problems continue."

sat as the finder of fact. This Court noted that the employer intensively monitored the employee over a 30-day period, increased his negative reviews and memos, and subjected him to careful scrutiny. *Id.* These actions were enough to support a materially adverse action in 1991 with a judge sitting as the factfinder and are enough in 2015 to support a finding of material adverse action by a reasonable jury.[5]

Additionally, SVH incorrectly singles out each specific act as a separate action for consideration in whether SVH subjected Yelling to an adverse action. This Court has held that the "cumulative weight of numerous individual incidents can be considered in determining whether the employee experienced material adverse action[.]" *Putman v. Sec'y*, 510 Fed. Appx. 827, 831 (11th Cir. 2013) (citing *Shannon v. Bellsouth Tele., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) and *EEOC v. Reichold Chems, Inc.*, 988 F.2d 1564, 1572 (11th Cir. 1993)). Viewing the facts in the light most favorable to Yelling, she had a normal employment history until she began complaining in early 2015 about race discrimination and a racially hostile work environment. As her complaints increased, so did SVH's negative response to her. In just seven months she was drug tested, suspended

---

[5] This Court also noted that the district court had sufficient evidence to support a finding of pretext, specifically noting the amount of credibility determinations the district court judge as the trier of fact had to make. This further supports Yelling's position that the concept of pretext requires credibility determinations and after the 1991 amendments to Title VII is a question for the jury. *See Weaver*, 92 F.2d at 1526. ("Given the lengthy record and the credibility choices necessary to properly evaluate the testimony, we conclude that the district court had sufficient evidence to support its finding of pretext.")

(twice), counseled, placed in two steps of progressive discipline, subjected to racial and retaliatory bullying, denied shifts, denied acting charge nurse shifts, and terminated. This more than establishes that SVH subjected Yelling to adverse action.

SVH misconstrues much of the evidence related to retaliation. Namely, Yelling does not concede that she first complained in June of 2015, in fact she complained internally to her charge nurses and co-workers making the statements as early as March 2015. SVH asserts without any citation that the record shows Yelling had performance issues before her complaints, in actuality, there is zero evidence that Yelling had any performance related complaints prior to her March 2015 complaints about Charge Nurse Wilhite's and other co-workers' racially derogatory statements. June 2015 is not the red-circle date that SVH tries to assert it is. The record shows that Yelling's protected activity began as early as March 2015. Finally, related to SHV's position on retaliation, as more thoroughly discussed in Yelling's opening brief, the district court's reliance on *Henderson v. Fedex Express*, 442 Fed. Appx. 502, 507 (11th Cir. 2011) is misplaced. Yelling directly disputes the alleged intervening conduct and has presented evidence that SVH was aware of similar charting and tracking inconsistencies before her EEOC charge but took no corrective or disciplinary action. Yelling has created a credibility question that must be addressed by the jury.

22

**C.    Even outside of the mixed motive analysis, Yelling has presented evidence of race discrimination and retaliation.**

Though Yelling's case is mixed-motive, even under a single-motive analysis the Court should Reverse the district court and remand the case for trial. Yelling has presented "sufficient circumstantial evidence to permit a jury to infer" that SVH acted with discriminatory and retaliatory intent in drug testing, disciplining, staffing, and terminating Yelling. *Blash v. City of Hawkinsville and Pulaski Co. Ga., Sheriff's Office*, 2021 WL 1561347 at *3 (11th Cir. Apr. 21, 2021). Yelling presented evidence of suspicious timing, unequal application of discipline, targeting, a dismissive attitude about her complaints, regular racist statements by co-workers and Charge Nurse Wilhite, racially driven quotas, replacement with a White nurse, pre-complaint evaluations compared to post complaint discipline, and weakness in the investigation related to her termination. Looking at the circumstances surround Yelling's last ten months of employment, compared to her first several years, and viewing all facts and inferences in the light most favorable to Yelling, Yelling has created a convicting mosaic of circumstantial evidence. *Lewis v. City of Union City, GA, (Lewis II)*, 934 F. 3d 1169, 1185 (11th Cir. 2019).

SVH spends the vast majority of its brief trying to force Yelling into the *McDonnell Douglas* pretext analysis because it is the hardest test for a plaintiff to meet. As discussed, it is not applicable in Yelling's case. However, even applying the difficult burden-shifting analysis, this Court should reverse the district court's

opinion and remand the case for trial.  First, despite SVH's argument that Yelling

cannot establish a comparator – Yelling does not have to establish a comparator –

as the district court noted, Yelling met her prima facie case by showing that she

was replaced by a White employee. Whether Yelling has established pretext is a

factual determination that calls for making credibility assements and is therefore a

question for the jury. "[T]he grant of summary judgment, though appropriate when

evidence of discriminatory intent is *totally* lacking, is generally unsuitable in Title

VII cases in which the plaintiff has established a prima facie cases because of the

'elusive factual question' of intentional discrimination." *Combs v. Plantation*

*Patterns Meadowcraft, Inc.*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *Burdine*,

450 U.S. 248, 255 & FN10 (1981)) (emphasis added). In its Response, SVH relies

on the alleged impartial investigation conducted by Patient Care Supervisor

Haynes and HR Business Partner Griffin and ignores the evidence that statements

were gathered and submitted to them by Nurse Manager Dubose. SVH additionally

ignores its own knowledge of the inaccuracy of the trackers and more specifically

that Yelling herself rarely tracked – a statement made by another SVH employee.

SVH breezes over a 2015 note related to Yelling's charting not matching her

tracking attempting to minimize its significance. *See Hein v. IMS Grear Holding,*

*Inc.*, 2018 U.S. Dist. LEXIS 112965, at *55 (N.D. Ga. Jan. 31, 2018) (discussing

that the employer's failure to act at the time it discovered alleged wrongdoing by

24

the employee casts doubt on the company's alleged reason.) Finally, SVH has no response related to the random track of Yelling that pinged more than two hours after the end of her shift that proved her tracker was not accurate on the date in question. These facts could lead a reasonable juror to believe that SVH was using the alleged falsification as a cover-up for its retaliatory termination. Accordingly, Yelling has established enough evidence that a reasonable juror may conclude that SVH's alleged reasons for taking the various actions against Yelling, including termination, are pretext.

Under multiple analytical frameworks, Yelling has presented enough evidence that SVH discriminated and retaliated against her on because of race and her participation in protected activity. This Court should reverse the lower court's opinion and remand the case for trial where a jury can make the appropriate factual determinations.

## **CONCLUSION**

SVH has asked this Court to ignore the evidence and analytical frameworks that are harmful to SVH. But viewing the facts and inferences in the light most favorable to Yelling as required under Rule 56 and applying the correct precedent and analytical framework, Yelling has presented enough evidence that a reasonable juror could find SVH subjected Yelling to a racially hostile work environment, otherwise discriminated against her because of race, and retaliated against her for

25

having the audacity to complain. The district court erred in granting summary

judgment and this Court should reverse the district court's opinion and remand the

case for trial.

        Respectfully submitted this 27th day of August, 2021.

                                    /s/ Leslie A. Palmer
                                    Leslie A. Palmer
                                    ATTORNEY FOR APPELLANT

PALMER LAW, LLC
104 23rd Street South, Suite 100
Birmingham, AL 35233
e-mail: leslie@palmerlegalservices.com
Tel: (205) 285-3050
Fax: (205) 285-3050

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) Fed. R. App. P. 29(d) because it contains 6,323 words as calculated by the word-counting feature of Microsoft Office 365.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type styles requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14 point-font, Times New Roman.


Dated: August 27, 2021                          /s/ Leslie A. Palmer_____
                                                OF COUNSEL

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 27, 2021, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send notification

of such filing to the following:

Tammy L. Baker
Shannon L. Miller
**Jackson Lewis, P.C.**
800 Shades Creek Parkway
Suite 870
Birmingham, AL 35209
bakert@jacksonlewis.com
millers@jacksonlewis.com

Gwendolyn Young Reams, Acting General Counsel
Jennifer S. Goldstein, Associate General Counsel
Elizabeth E. Theran, Assistant General Counsel
Susan R. Oxford, Attorney
**Equal Employment Opportunity Commission**
Office of General Counsel
131 M. Street N.E., 5th Floor
Washington, D.C. 20507

/s/ Leslie A. Palmer
OF COUNSEL